Argued June 5, reversed July 17, 1975

HAMANN ET AL, *Respondents, v.*
BRIMM ET UX, *Appellants.*
537 P2d 1149

*Larry C. Hammack* of Haviland, deSchweinitz, Stark & Hammack, Medford, argued the cause and filed briefs for appellants.

*Malcolm J. Corrigall* of McNutt, Gant & Ormsbee, Coos Bay, argued the cause for respondents Kettler. With him on the brief was James W. Gardner, Gold

Beach, for respondent Hamann, and William A. Hedges, North Bend.

O'CONNELL, C. J.

This is a suit to establish an easement of way by prescription across defendants' land. The trial court entered a decree establishing the easement claimed by plaintiffs and enjoined defendants from interfering with plaintiffs' use of it. Defendants appeal, contending that the evidence does not support the decree.

The parties own adjoining parcels of real property north of the town of Brookings in Curry County, Oregon. All trace their titles from Fred LaForge, a common grantor. In 1948, LaForge sold five acres of his 32-acre holding to plaintiff Hamann. The remainder of LaForge's holding was sold to defendants sometime in the 1950's. In 1969, plaintiffs Kettler purchased one of the twelve lots into which Hamann had divided his five-acre tract.

The roadway in question is a narrow gravel track beginning at a public road which forms the eastern boundary of Hamann's tract,[1] through what is called the "turnaround," just to the south of Kettlers' lot and then joins other small roads. (See map.) When Hamann purchased the five-acre tract from LaForge in 1948, the roadway existed in more or less its present condition up to the turnaround. At the time of Hamann's purchase, LaForge granted Hamann an easement along the northwesterly side of the Hamann property and told him that he could also use the road up to the turnaround. According to Hamann, LaForge said he planned to

---

[1] The road is now a few feet from plaintiffs' western boundary. There is some dispute in the record over whether the road originally formed the boundary, but has shifted to the west.

leave the road open for public access to the turn-
around, which the public used as a viewpoint in
scanning a vast stretch of the coastline in the distance.

Neither LaForge nor defendants, as his successors,
revoked the permission granted to Hamann or the
license granted to the public until defendants notified

plaintiffs Kettler in 1973 that continued use of the road would be considered trespassory.

■ As we stated in *Thompson v. Scott,* 270 Or 542, 528 P2d 509, 511-12 (1974):

"* * * When the use of the servient owner's land is permissive at its inception, the permissive character of the use is deemed to continue thereafter unless the repudiation of the license to use is brought to the knowledge of the servient owner. This principal is stated in 5 Restatement of Property, § 458, comment *j,* pp. 2933-34 (1944):

" '* * * Thus, a licensee cannot begin an adverse use against his licensor merely by repudiating his license under such circumstances that the licensor has a reasonable opportunity to learn of the repudiation. Justice to the licensor requires more than this. It requires that he know of the repudiation. If knowledge does come to him the source is immaterial. It is not necessary that it come from the licensee, but the responsibility of seeing that it does come to him is on the licensee, a responaibility [sic] the obligation of which cannot be satisfied by showing that the licensor neglected to avail himself of means of knowledge.'

"* * * * *

"When it is contended that a permitted use is changed into an adverse use, 'the claimant is required to prove the new and different character of the continued use very clearly.' " (Citing 3 Powell on Real Property, ¶ 413, p. 477 (1973)).

■ Plaintiffs have not proved any substantial change in the character of the use originally permitted by LaForge. From 1948 to the present the use has been relatively light and for the most part indistinguishable from the use made by the general public with the permission of defendants and their predecessors in interest.

We hold, therefore, that plaintiffs have failed to prove the adversity of use required to establish the prescriptive easement claimed. The decree is reversed.

Reversed.