Argued and submitted April 21, affirmed June 24, 1998

Allen L. WINTERS
and Meredith J. Winters,
*Respondents,*

*v.*

Richard KNUTSON
and Kurk Knutson,
*Appellants.*

(96-CV-0661; CA A97992)

962 P2d 720

Roger Gould argued the cause and filed the brief for appellants.

Jerry Lesan argued the cause for respondents. With him on the brief was Lesan & Finneran.

Before Edmonds, Presiding Judge, and Armstrong and Linder, Judges.

EDMONDS, P. J.

**EDMONDS, P. J.**

■        Defendants appeal from a judgment for plaintiffs on their claims to quiet title and for trespass and against defendants' counterclaim for a prescriptive easement. The court declared that defendants have no legal entitlement to use a road passing through plaintiffs' property. Although plaintiffs' claim for trespass is an action at law, the parties agreed to try all the claims to the court.[1] Because defendants' appeal is essentially an appeal from a judgment in equity, we review *de novo*. ORS 19.415(3). As a result of our review, we affirm.

The dispute in this case arises over the claim of defendants of the right to use a road known as Potato Bottom Road, which traverses plaintiffs' property. In 1976, Country Acres, Inc., (Country) acquired the property now owned by plaintiffs. Country and adjoining property owners improved and extended Potato Bottom Road from a county road into lots fronting Ten Mile Lake in Coos County that did not have road access. Under a 1983 agreement, they created reciprocal easements. The agreement gave each of the three grantors reciprocal rights to use the road over the others' property and granted a conditional right to other lot owners to obtain appurtenant easements to their lots. The conditions under the agreement required that the lot owners pay an assessment to defray the costs of the improvement and the extension of the road and that they agree to abide by the terms of the easement and maintenance agreement.

In 1984, defendant Kurk Knutson purchased a lot on Ten Mile Lake. By that time, Country had financial problems and, in 1985, the parcels presently owned by plaintiffs were foreclosed on by creditors. Plaintiffs' properties were purchased at the resulting sheriff's sale in 1985. Plaintiffs acquired one of their parcels in June 1988, and another parcel in March 1991.[2] Plaintiffs' property is unenclosed and is harvested timberland without improvements, except for the road that runs through it.

---

[1] The trial court awarded plaintiffs the sum of $100 on their claim for trespass.

[2] Plaintiffs' predecessors in interest are Burkey, Erb and Warthen.

Defendants' parcel is one of the lots that could qualify under the agreement for an easement to use the Potato Bottom Road system. However, defendants have never paid the consideration or obtained a recordable interest, as required by the terms of the easement agreement. Defendants were aware that they had the right to obtain an easement but chose not to do so. An undetermined number of owners or guests and members of the general public also use the road through plaintiffs' properties.

In July 1988, plaintiffs notified defendants that they did not have a right to use the road through plaintiffs' properties. They informed defendants that defendants could use the road with plaintiffs' permission, if they agreed to acknowledge that their use was permissive and expressly assumed a shared responsibility for maintenance. Defendants' attorney responded by letter to plaintiffs' attorney:

> "First, with respect to the road, the Knutson property is one of several easement grantees under the terms of an easement dated January 19, 1983. Mr. Knutson has in fact been complying with the terms of that easement including its incorporation by reference of a road maintenance agreement for a number of years now. He spent several hours operating his cat improving the road and has also just in the past year placed $150 worth of rock on the road."

Plaintiffs testified that they accepted defendants' attorney's assertion that defendants were in compliance with the easement and road maintenance agreement until 1995 when the Potato Bottom Road Maintenance Committee advised defendants that they did not have a right to use the road. After plaintiffs protested about defendants' use of the road, defendants' attorney wrote to plaintiffs' attorney:

> "The Knutsons have no desire to be difficult on this issue. They simply take the position they are not a party to the written easement or any maintenance agreement. Their rights to travel upon Potato Bottom Road had been created long ago by prescription.
>
> "* * * * *
>
> "Richard and Kurk Knutson's rights and obligation with respect to Potato Bottom Road are controlled by the law of prescriptive easements and the statutory easement owner

obligations. The terms and provisions of the January 19, 1983 easement and road maintenance agreement are not controlling in this instance because Richard and Kurk Knutson are not parties to those documents and choose not to be parties to those agreements."

This litigation ensued.

After trial, the trial court made the following findings:

"1.   Mel Luckie [one of plaintiffs' neighbors] was not acting on behalf of Plaintiffs' predecessors when he advised Defendants they could not use the road. Mr. Luckie was referring only to the road through his property not that of Plaintiffs. The fact that Mr. Luckie may have advised the Defendants they could not use the road was not communicated to Plaintiffs' predecessors.

"2.   Mr. Hankens [another lot owner] was not acting on behalf of Plaintiffs' predecessors when he advised Defendants not to use the road. Any advice Hankens may have given to Defendants was not communicated to Plaintiffs' predecessors.

"3.   Mr. Payne [a logging contractor involved in the construction of the road] was not acting on behalf of Plaintiffs' predecessors when he contacted one of the Defendants seeking payment in exchange for an acknowledgment that Defendants had a right to use the road. Any discussion between Payne and the Defendants was not communicated to Plaintiffs' predecessors.

"4.   The Defendants did not communicate their claimed adverse nature of use to any of Plaintiffs' predecessors.

"5.   The Defendants' use throughout the period was for access to Defendants' cabin and the character of this use did not change throughout the period both before and after Plaintiffs acquired the property.

"6.   Plaintiffs purchased Parcel One in June of 1988 and gave notice to Defendants in July of that year that Plaintiffs considered Defendants' use to be permissive and that such permission will continue only if Defendants acknowledge that this was the nature of the use. On July 29, 1988, Defendants asserted their right to use the road and denied that the nature of the use was permissive.

"7. Defendants continued to use the road on the average of twice a week from August 1, 1988, through trial."

Based on these findings, the trial court ruled that defendants had failed to carry their burden to prove the establishment of a prescriptive easement. On *de novo* review, we agree with the trial court's findings.

On appeal, defendants argue that they have established all the elements of a prescriptive easement over the portion of the road traveling through plaintiffs' property as the result of their use of the road since 1984. Plaintiffs counter:

"None of the people whom Defendants claim had knowledge of the adverse character of Defendants' use were members of any road committee, they were not agents of Plaintiffs' predecessors and they did not communicate with Plaintiffs or Plaintiffs' predecessors about Defendants' use of the road. There is therefore no basis for somehow imputing the knowledge Defendants contend was possessed by these people to Plaintiffs or their predecessors."

The elements required for establishing a prescriptive easement were stated by the Oregon Supreme Court in *Thompson v. Scott*, 270 Or 542, 528 P2d 509 (1974). "In order to establish an easement of way by prescription the plaintiffs must establish an open and notorious use of defendants' land adverse to the rights of defendants for a continuous and uninterrupted period of ten years." 270 Or at 546. In this case, the burden is on defendants to demonstrate those elements by clear and convincing evidence or evidence that makes proof of each element highly probable. *Cheney v. Mueller*, 259 Or 108, 124, 485 P2d 1218 (1971). To satisfy the "open and notorious" requirement of a prescriptive easement, "the use must be such that the landowner has a reasonable opportunity to learn of its existence and nature." *Thompson v. Schuh*, 286 Or 201, 211, 593 P2d 1138 (1979).

In this case, defendants have not carried their burden of proof regarding the "open and notorious" requirement. In order for a ten-year period of time to have expired since 1984, defendants must tack the ownership of plaintiffs with the ownerships of plaintiffs' predecessors in interest. When plaintiffs challenged defendants' use of the road in 1988,

defendants took the position that their claim of right to use the road came from their purported compliance with the easement agreement. We find the *Restatement* informative as to the significance of that fact. As noted in *Restatement of Property* § 458, *comment k* (1944):

> "Where knowledge of a use does not come to those against whom it is claimed to be adverse, it is not open and notorious as to them, even though they have a reasonable opportunity to learn of its existence, if knowledge of the use of its character is intentionally withheld from them. A user of land cannot get the benefits of prescription against those from whom he has intentionally and successfully withheld knowledge of the use."[3]

Therefore, even if the extent of defendants' use had been adequate in and of itself to put a reasonable landowner on notice that defendants claimed a prescriptive right to use the road, the successful attempt to conceal the adverse character of the use would prevent the defendants from gaining the benefits of prescriptive conduct. *See id.; see also* Bruce and Ely, *The Law of Easements and Licenses in Land* (1995); 2 *American Law of Property* § 8.56, 269-70 (1952). It was not until 1995 that defendants expressed their claim of a prescriptive easement to plaintiffs. Under the circumstances, the trial court did not err in holding that defendants did not carry their burden of proof by clear and convincing evidence.

Affirmed.

---

[3] Oregon has followed the *Restatement* regarding prescriptive easements in *Thompson v. Schuh*, 286 Or 201, 211, 593 P2d 1138 (1979) (§ 458, *comment i,* and § 459, *comment b*); *Hamann v. Brimm*, 272 Or 526, 529, 537 P2d 1149 (1975) (§ 458, *comment j*); *Thompson v. Scott*, 270 Or 542, 548-50, 528 P2d 509 (1974) (§ 458, *comment j*); *Feldman et ux v. Knapp et ux*, 196 Or 453, 474, 250 P2d 92 (1952) (§§ 458, 464).